**Affirmed as Reformed and Memorandum Opinion filed August 7, 2014.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-13-00358-CR**

---

**TOMMY EARL HUTCHINS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 1337442**

---

## M E M O R A N D U M   O P I N I O N

Appellant, Tommy Earl Hutchins, appeals his conviction for aggravated robbery. In four issues, appellant contends (1) the trial court erred by refusing to conduct a hearing on appellant's motion for new trial, (2) the trial court erred by denying the motion for new trial, (3) the evidence is legally insufficient to support the conviction, and (4) the trial court erred by admitting 911 records.

We conclude appellant's issues lack merit. However, there is a typographical error in the judgment because it states "N/A" for appellant's pleas,

and the jury's findings, on two enhancement paragraphs. We exercise our authority to *sua sponte* reform the judgment to reflect that appellant pleaded "Not True" to the two enhancement paragraphs and the jury found that both paragraphs were "True."[1] We affirm the judgment as reformed.

## I. BACKGROUND

According to the State's evidence, on Valentine's Day 2012, the complainant, Lynda Stallworth, and her friends, Bonnie Dagostino and Victoria Reed, were selling flowers on the side of a frontage road in Houston. While it was getting late, but still light out, a Chevrolet Silverado pickup truck, described by witnesses with varying descriptions of a blue/green/gray color, stopped nearby. The driver, later identified as appellant, exited the vehicle wearing jeans, a plaid shirt, a baseball cap, and a yellow/orange reflective vest typically worn by roadside construction workers. Appellant approached Dagostino and Reed, who were seated at a table. Appellant pointed a handgun, which was wrapped in a towel, at them and demanded money. When the women replied that they did not have any money, appellant approached in an aggressive manner as though he intended to search them. Stallworth, who was standing nearby, intervened and stated that she had some money. While appellant pointed the gun at Stallworth, she gave him $40 from her pocket. When appellant became angry and insisted Stallworth had more money, she stated there was money in her car. Appellant walked Stallworth to her car at gunpoint while she begged him not to kill her. Stallworth gave appellant approximately $700 from the glove compartment. Then, appellant walked to his truck and left the scene.

---

[1] *See* Tex. R. App. P 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992).

Dagostino's son, Clutarus Johnson, was seated in his vehicle at a nearby traffic light. Johnson thought something unusual was occurring because he saw appellant approach the women and then escort Stallworth to her car. When Johnson reached the scene, the women told him they had been robbed. While Stallworth called 911, Johnson followed the robber's pickup truck and recorded the license plate number before losing sight of the truck. Based on that license plate number, the police determined the truck was registered to appellant.

Subsequently, in a police photo array, Stallworth positively identified appellant as the robber, and Dagostino gave what the police called a "tentative" identification. In a live line-up, Reed positively identified appellant as the robber.

Appellant was arrested at his home, where the police observed a blue Chevrolet Silverado pickup truck with the license plate number recorded by Johnson and registered to appellant. Inside the truck, the police observed an orange construction vest.

At trial, all three women identified appellant as the robber. A jury convicted appellant of aggravated robbery. The jury found two enhancement paragraphs were "true" and assessed punishment of sixty years' confinement. After the trial court rendered judgment, appellant filed a motion for new trial, which the trial court denied by written order without holding a hearing.

## II. SUFFICIENCY OF THE EVIDENCE

We will first address appellant's third issue, challenging the sufficiency of the evidence to support his conviction. When reviewing the sufficiency of the evidence, we view all evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense

3

beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). In a sufficiency review, we consider all evidence the jury was permitted to consider, whether it was properly or improperly admitted at trial. *Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004). We do not sit as the thirteenth juror and may not substitute our judgment for that of the fact finder by re-evaluating weight and credibility of evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's responsibility to fairly resolve conflicts in testimony, weigh the evidence, and draw all reasonable inferences from basic facts to ultimate facts. *Id.* Our duty as reviewing court is to ensure the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

A person commits aggravated robbery if (1) in the course of committing theft, (2) with intent to obtain or maintain control of property, (3) he knowingly or intentionally, (4) threatens or places another in fear of imminent bodily injury or death, and (5) uses or exhibits a deadly weapon. *See* Tex. Penal Code Ann. §§ 29.02(a)(2), 29.03(a)(2) (West 2011). Appellant challenges only the sufficiency of the evidence to support the finding that he was the robber.

Appellant first contends there were inconsistencies in the testimony of the witnesses regarding the color of the robber's pickup truck and his clothing.

We disagree the testimony was necessarily inconsistent relative to the color of the truck. At trial, the three women, respectively, described the color as "gray/grayish green," "greenish blue," and "gray." Additionally, Johnson testified that when he arrived at the scene, he was told the robber left in a "blue Silverado" and as he approached the truck, he noticed it was a "bluish greenish" Silverado. The jury could have reasonably concluded that different witnesses viewed the same truck with these varying, but not definitely contrasting, perceptions of the color.

Moreover, the testimony was not inconsistent regarding the clothing worn by the robber. All three women and Johnson testified the robber wore the type of yellow/orange reflective vest worn by roadside construction workers. Two of the women and Johnson testified the robber wore a cap, with one specifying it was a "baseball" cap. One woman added that the robber wore jeans, and another added that he wore a plaid short. The fact that one witness omitted mentioning a cap and two witnesses added specific comments about other articles of clothing to their descriptions does not make any of the testimony inconsistent.

Nonetheless, to the extent the testimony may be characterized as inconsistent, we defer to the jury's role to weigh any inconsistencies and decide what testimony to believe from each witness. *See Isassi*, 330 S.W.3d at 638. The jury could have relied on the fact that two witnesses relayed (at the scene or at trial) the truck was a Silverado of some shade of blue and a police officer described the truck registered to appellant and later found at appellant's home as a "blue . . . Silverado." Further, the jury could have assigned weight to the fact that the police found a construction vest in appellant's truck matching that described by all of the witnesses. Finally, the jury was free to consider any inconsistencies regarding the color of the robber's truck and his clothing as insignificant considering (1) the police determined based on the license plate number that the truck was registered to appellant and subsequently found at appellant's home, (2) one of the women positively identified appellant in a photo array, (3) another identified appellant in a live line-up, and (4) all three women identified appellant at trial.

Appellant further mentions that Dagostino made only a tentative identification of appellant in the photo array. However, the jury could have reasonably concluded appellant was the robber based on all of the positive identification evidence listed above.

5

Appellant also argues the identifications were "tainted" because the responding officer spoke with the witnesses collectively at the scene. We defer to the jury's role to decide whether the collective interview affected the credibility of any witness. *See id.*

In summary, we conclude the jury could have found beyond a reasonable doubt that appellant committed aggravated robbery. Accordingly, the evidence is sufficient to support appellant's conviction. We overrule his third issue.

### III. REFUSAL TO HOLD HEARING ON MOTION FOR NEW TRIAL

In his first issue, appellant contends the trial court erred by refusing to hold a hearing on the motion for new trial.

We review a trial court's refusal to hold a hearing on a motion for new trial under an abuse-of-discretion standard. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). A trial court abuses its discretion if the motion for new trial (1) raises matters that are not determinable from the record, and (2) establishes the existence of reasonable grounds showing that the defendant could be entitled to relief. *Id.* at 339–40. However, the motion "must be supported by affidavit specifically showing the truth of the grounds of attack" because "[o]therwise, general entitlement to a hearing could lead to "'fishing expeditions.'" *King v. State*, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000).

In his motion for new trial, appellant contended he received ineffective assistance of counsel because trial counsel failed to interview appellant's wife or call her as a witness when she would have provided an alibi. To prevail on an ineffective assistance claim, a defendant must show by a preponderance of the evidence that (1) counsel's representation fell below the objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's

6

deficiency, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). To be entitled to a hearing on a motion for new trial alleging ineffective assistance, a defendant must allege sufficient facts from which a trial court could reasonably conclude that (1) counsel failed to act as a reasonably competent attorney and (2) but for counsel's failure, there is a reasonable likelihood the outcome of his trial would have been different. *Smith*, 286 S.W.3d at 340–41.

Appellant's motion raises an issue not determinable from the record—that trial counsel was ineffective because he failed to interview and present a potential alibi witness. However, appellant failed to satisfy the second element necessary to obtain a hearing because he did not allege, with supporting affidavits, sufficient facts, from which the trial court could reasonably conclude counsel failed to act as a reasonably competent attorney.

The only evidence provided in support of the motion for new trial was the affidavit of appellant's wife who averred, in pertinent part:

> On February 14, 2011[,] I came home and my husband [appellant] decided we would go out to eat. While I was getting ready[,] he said he had a run to make. He was gone for about an hour and came home with a valentine gift which was a package with different items in it. It was about dusk when he got home.

According to appellant, the trial witnesses testified the robbery occurred at dusk, but the affidavit established appellant arrived home just before dusk.[2]

---

[2] The wife's affidavit describes events of "February 14, **2011**," but the incident at issue occurred February 14, **2012**. Possibly, the date in the affidavit was a typographical error. However, we need not decide whether including a different date than the incident alone precluded appellant from entitlement to a hearing because the trial court did not otherwise abuse its discretion by refusing to hold a hearing.

7

A criminal defense attorney has a duty to make an independent investigation of the facts of a case, which includes seeking out and interviewing potential witnesses. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). However, appellant presented no evidence that trial counsel failed to interview appellant's wife. In the affidavit, the wife mentioned nothing about whether counsel spoke to her. Without more to support the motion for new trial, the trial court would have acted within its discretion by not foreclosing the possibility that (1) counsel interviewed the wife and she did not provide the information contained in her affidavit (assuming without deciding it constituted an alibi), or (2) counsel otherwise had a valid reason that the wife would not be an effective witness. *See Weisinger v. State*, 775 S.W.2d 424, 427 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd) (recognizing it is trial counsel's prerogative, as a matter of trial strategy to decide which witnesses to call).

Therefore, appellant did not present evidence from which the trial court could reasonably conclude counsel failed to act as a reasonably competent attorney because he did not interview the wife and present her as a trial witness. *See Smith*, 286 S.W.3d at 340–41; *see also Johnson v. State*, 691 S.W.2d 619, 626–27 (Tex. Crim. App. 1984) (rejecting claim of ineffective assistance for allegedly failing to interview witnesses because there was no evidence counsel did not interview witnesses); *Cf. Perez v. State*, 403 S.W.3d 246, 248–49, 251–52 (Tex. App.— Houston [14th Dist.] 2008), *aff'd* 310 S.W.3d 890, 897 (Tex. Crim. App. 2010) (holding first prong of *Strickland* was satisfied where evidence showed trial counsel made only one unsuccessful attempt, on the day of trial, to contact potential alibi witness suggested by appellant, never visited the witness's home, never moved for a continuance to interview the witness, never subpoenaed the

witness, failed to search for other possible witnesses, did not interview witnesses, and spent minimal time preparing for trial).

Accordingly, the trial court did not abuse its discretion by refusing to hold a hearing on appellant's motion for new trial. We overrule appellant's first issue.

## IV. DENIAL OF MOTION FOR NEW TRIAL

In his second issue, appellant argues the trial court erred by denying his motion for new trial. We review a trial court's denial of a motion for new trial under an abuse-of-discretion standard. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). A trial judge abuses its discretion in denying a motion for new trial when no reasonable view of the record could support its ruling. *Id.* We conclude the trial court did not abuse its discretion by denying the motion for new trial for the same reason we uphold its refusal to hold a hearing on the motion—appellant did not present evidence that trial counsel performed deficiently by failing to interview appellant's wife. Thus, we overrule appellant's second issue.

## V. ADMISSION OF 911 RECORDS

In his fourth issue, appellant argues the trial court erred by admitting 911 records from the City of Houston. The records are not a transcript of the 911 call, made by Stallworth. Rather, the records contain information, in the form of somewhat cryptic entries, apparently obtained by the 911 operator from Stallworth. At trial, the State offered a business-records affidavit to support admission of the records. Appellant objected that even if the records were "business records," they contained "hearsay within hearsay" as a recording of information provided by witnesses to the incident. We need not decide whether the trial court erred by admitting the records because we conclude any error was harmless.

9

The erroneous admission of hearsay is non-constitutional error. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). We must disregard non-constitutional errors that do not affect a criminal defendant's "substantial rights." *See* Tex. R. App. P. 44.2(b). Under this standard, an error is reversible only when it had a substantial and injurious effect or influence in determining the jury's verdict. *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). We should not overturn the conviction if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect. *Id.* Additionally, erroneous admission of evidence is not reversible error if the same or similar facts are proved by other properly admitted evidence. *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); *Anderson v. State*, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986).

Appellant complains of eight categories of information regarding the robbery contained in the 911 records: (1) the location; (2) the number of suspects; (3) the number of victims; (4) the description of the incident; (5) the amount of money taken; (6) the description of the robber; (7) the color and license plate of the robber's vehicle; and (8) statements made by the robber. With three possible exceptions, the same information was admitted through the testimony of the witnesses to the incident.

One exception is that the 911 records show the license plate number of the robber's truck as "BH5127," but testimony reflected that the number provided by Johnson to the responding police officer was "BH0527"—which matched the truck registered to appellant and later found at his home. During the chase, Johnson relayed the robber's license plate number via cell phone to the women, and subsequently a number was provided to the responding officer. If anything, this

10

inconsistency was potentially helpful to appellant by raising a question on whether the robber's truck was actually registered to appellant.[3]

As another exception, the 911 records reflected the robber was 6'1" or 6'2", 40-45 years old, and 200 pounds, which was not included in the description provided at trial by the witnesses to the incident. However, we have fair assurance that admission of this additional information (to the extent it accurately described appellant) did not influence the jury, or had but a slight effect, considering the strength of all the other evidence, discussed above, identifying appellant as the robber.

Finally, the 911 records contained the following entry "Stat he was going to shoot her if she didn't give him the money." It is not clear whether Stallworth reported that appellant made such a threat or Stallworth reported that she thought appellant would shoot her. If the latter, the entry effectively mirrored Stallworth's testimony that appellant held a gun on her while demanding money and she was afraid she would be killed. Alternatively, the testimony did not include any reference to such an affirmative threat by appellant. Regardless, admission of any such threat via the 911 records was harmless because Stallworth's testimony otherwise proved that appellant threatened or placed her in fear of imminent bodily injury or death, as required for a conviction.

In summary, because any error in admitting the 911 records was harmless, we overrule appellant's fourth issue.

---

[3] However, relative to sufficiency of the evidence, the jury was free to believe that Johnson correctly recorded the number matching appellant's truck and it was provided to the responding officer, but the number was incorrectly relayed by Stallworth to the 911 operator or incorrectly entered in the 911 records. *See Moff*, 131 S.W.3d at 488.

## VI. CONCLUSION

We reform the judgment to reflect that appellant pleaded "Not True" to the two enhancement paragraphs and the jury found that both paragraphs were "True," and we affirm the judgment as reformed.

/s/     John Donovan
        Justice

Panel consists of Chief Justice Frost and Justices Donovan and Brown.

Do Not Publish — Tex. R. App. P. 47.2(b).